```
         IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *
DAVID A. ROBERTS,
                                  *
     Plaintiff,
                                  *
v.                                          CIVIL NO.: WDQ-04-2039
                                  *
JOHN NICHOLAS, et. al,
                                  *
     Defendants.
                                  *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

David A. Roberts, *pro se*, has sued the Maine Department of Health and Human Services (the "DHHS"),[1] John Nicholas, Commissioner of the DHHS, and six other DHHS employees individually and in their official capacities, for civil rights violations under 42 U.S.C. § 1983. Pending is the Defendants' motion to dismiss. For the following reasons, the motion will be granted.

I.  Background

a.  State Child Support Proceedings

On January 22, 1981, Roberts was divorced from his former wife, Rosemary H. Petke, in Maine's District Court for Southern

---

[1] The DHHS was known as the "Maine Department of Human Services" when this case was filed, but has changed its name to the "Maine Department of Health and Human Services."

1

Aroostook County Compl. ¶ 17. The Maine court's divorce order ordered Roberts to pay $120 per month in child support for each of his three children. Defs.' Mot. to Dismiss ("Defs.' Mot." Ex. C (Jan. 22, 1981 order of Maine district court, the "Maine Support Order").

Roberts was a Maine resident when the divorce was filed, but moved to Maryland soon after the Maine Support Order was entered. Compl. ¶¶ 19-20.

On February 23, 1981, Petke applied to the DHHS for financial aid for her children, and thereby subrogated her right to child support under the Maine Support Order to the State of Maine. *Id.* ¶ 21.

On March 17, 1982, the DHHS filed a petition with Maine's Superior Court for Aroostook County (the "Maine Superior Court") pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA"),[2] seeking a judgment against Roberts for $4,680 in child support arrearages and an order for him "to pay such sums per child per month as would be deemed fair and reasonable." *Id*. ¶ 22; Defs.' Mot. Ex. D (the "Petition"). The Maine Superior

---

[2] URESA was adopted in both Maine and Maryland, and was codified in Maine as Me. Rev. Stat. Ann. tit. 19, §§ 331-420, and in Maryland as Md. Ann. Code art. 89C §§ 1-39. It was re-codified in Maryland in 1984 as Md. Code Ann., Fam. Law §§ 10-301 to -420 (1984). 1984 Md. Laws ch. 296. URESA has been superceded in both states by the Uniform Interstate Family Support Act ("UIFSA"), codified as Me. Rev. Stat. Ann. tit. 19-A, §§ 2801-3401, and Md. Code. Ann. Fam. Law §§ 10-301 to -359.

2

Court certified the Petition on March 23, and ordered it sent to the Maryland Department of Human Resources for subsequent action in the appropriate Maryland court pursuant to URESA.  Compl. ¶ 23; Defs.' Mot. Ex. E (Maine Superior Court certification order).

On April 14, 1982, the Petition was docketed in Maryland's Circuit Court for Wicomico County (the "Circuit Court").  Defs.' Mot. 6, Ex. G.  On January 7, 1983, the Circuit Court ordered Roberts's child support payments suspended until he finished school, and on April 27, 1984, the Circuit Court ordered Roberts to begin paying $180 per month to the DHHS on May 1, 1984. Compl. ¶¶ 27-29; Defs.' Mot. Exs. H, I.

On March 31, 1997, the DHHS asserted that the Maine Support Order was still effective and filed a lien for arrearages on Roberts's federal income tax refunds in Maryland's Circuit Court for Dorchester County.  Compl. ¶¶ 33-34.

On November 20, 2000, the DHHS filed another action to collect arrearages under the Maine Support Order in the Circuit Court pursuant to the Uniform Interstate Family Support Act ("UIFSA").[3]  *Id.* ¶ 35.  The State's Attorney for Wicomico County filed a motion to dismiss the case, asserting that Maryland already had an enforcement order in place for the parties and the case had been closed.  *Id.* ¶ 38.  On May 14, 2001, the Circuit Court granted the motion and dismissed the UIFSA action with

---

[3] See note 2, *supra*.

prejudice.  *Id.* ¶ 39 Defs.' Mot. Ex. J.

b.  Federal Civil-Rights Case Proceedings

Roberts alleges that the DHHS continues to attempt to collect arrearages under the Maine Support Order, and, in addition to the federal tax lien, has sent him collection notices, reported adverse information to national credit bureaus, attempted to withhold his wages, and threatened him with criminal prosecution under the Child Support Recovery Act, 18 U.S.C. § 228.  *Id*. ¶¶ 40-41, 54-57, 59, 62-66, 69-71, 74-75.

On July 1, 2004, Roberts filed his Complaint, claiming that the Defendants' conduct in pursuit of arrearages under the Maine Support Order has violated the Full Faith and Credit Clause of Article IV, the Fourth Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B.

On August 27, the Defendants moved to dismiss the Complaint, arguing that the Court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine.[4]  Paper No. 5.  The Court granted the motion, applying the Fourth Circuit's former guidance on the *Rooker-Feldman* doctrine, and dismissed the Complaint for the reasons stated in its December 17, 2004 Memorandum Opinion.

---

[4] See Justice Ginsburg's opinion in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), for an account of the doctrine's history and its correct application.

4

Paper No. 20.

On January 18, 2005, Roberts appealed, and subsequently, on March 30, 2005, the U.S. Supreme Court clarified the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  On May 24, 2006, the Fourth Circuit vacated this Court's December 17, 2004 Order and remanded the case for further consideration in light of *Exxon Mobil Corp.* and the Fourth Circuit's subsequent interpretation of the *Rooker-Feldman* doctrine in *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006).  *Roberts v. Nicholas*, 182 F. App'x 201, 203 (4th Cir. 2006).

The Defendants advise the Court that they no longer rely on the *Rooker-Feldman* doctrine, and instead move the Court to dismiss the Complaint because: (1) Roberts fails to state a claim upon which relief can be granted; (2) the individual defendants are entitled to qualified immunity; (3) the Court lacks personal jurisdiction over the Defendants; and (4) neither the DHHS nor its employees sued in their official capacities are subject to liability under 42 U.S.C. § 1983.

II.  Discussion

A.  Standard of Review for Failure to State a Claim

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a motion to dismiss should be granted "only if it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993). All allegations of fact are treated as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan*, 7 F.3d at 1134. But the court is not required to accept as true "legal conclusion[s] couched as a factual allegation[s], "unwarranted deductions of fact, or unreasonable inferences." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted). Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney*, 293 at 730 (citation and internal quotation marks omitted).

In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and any incorporated documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action, as well as facts subject to judicial notice, such as the content of court records. *Id.*; *Colonial Penn Ins. Co. v. Coil*; 887 F.2d 1236, 1239-40 (4th Cir.

6

1989).

When a civil rights plaintiff appears *pro se*, there is "a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). "[T]he district court must examine the pro se complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations." *Id*. The court should "not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed." *Id*.

B.  Statutory Background:

URESA was approved by the National Conference of Commissioners on Uniform State Laws in September 1950, and was adopted by Maryland on June 1, 1951, and by Maine on August 8, 1953.  9C Uniform Laws Annotated 1-3 (1957).  A primary purpose of the act was "to improve and extend by reciprocal legislation the enforcement of duties of support." Md. Code Ann., § 10-302 (1984).  URESA was superceded by the enactment of UIFSA in Maryland on January 1, 1997, and in Maine on July 1, 1995.  1996

7

Md. Laws ch. 667; 1994 Me. Legis. Serv. ch. 690.

Under URESA, a person owed child support (the "Obligee") under the law of one state (the "Rendering State") could file a petition in a court of that or any other state having enacted URESA (the "Initiating State") seeking enforcement of a child support order of the Rendering State in another URESA state (the "Responding State") that could obtain jurisdiction over the person owing that support (the "Obligor").  *Id*. §§ 10-301, -304, -307, -309, -311.  An Obligee could be a state or political subdivision.  *Id*. § 10-301, -308.  If the court of the Initiating State found that there was a duty of support and the Responding State could obtain jurisdiction over the Obligor, it certified the petition and sent it to the appropriate court or official of the Responding State.  *Id*. § 10-313.  If the court of the Responding State found a duty of support, it could order the Obligor to provide support or reimbursement for any arrearages.  *Id*. § 10-322, -324.

As to any effect of the Responding State court's order on the Rendering State court's order, Maryland's URESA statute explicitly provided in part that "[a]n order of support issued by the court of this State when acting as a responding state does not supercede any other order of support."  *Id*. § 10-328.

In Maine's URESA statute, the corresponding section provided in part:

8

> A *support order made by a court* in this State pursuant to this Act does not nullify and *is not nullified by* a support order made by a court in this State pursuant to any other law or by *a support order made by a court of any other state* pursuant to a substantially similar Act or any other law, regardless of priority of issuance, *unless otherwise specifically provided by the court*. . . .

Me. Rev. Stat. Ann. tit. 19 § 409 (1971) (emphasis added).  As Md. Code Ann, Fam. Law § 10-328 (1984) stated that a support order of a Maryland court, as the court of Responding State, "does not supersede any other order of support," nullification of a Maine support order by a Maryland support order was not possible under URESA.  Md. Code Ann., Fam. Law § 10-328 (1984) (previously codified as Md. Ann. Code art. 89C § 29).


C. Analysis

The Defendants argue that, even if all of Roberts's factual allegations are true, the Maine Support Order is still in effect, and thus their alleged conduct in attempting to enforce that order is a lawful exercise of their rights.

Roberts does not allege that he has fully complied with the Maine Support Order; rather, he maintains that: (1) the Maine Support Order was modified by the Maryland Circuit Court's subsequent orders in 1983 and 1984; and (2) the DHHS's "claim" for arrearages under the Maine Support Order has been precluded by the Circuit Court's dismissal of the UIFSA action on May 14, 2002.  Resp. 2.

9

First, Robert's legal conclusion that the Maine Support Order was modified by any subsequent Maryland Circuit Court support order is incorrect.  "Notwithstanding the authority vested in the court of the responding state to make its decision on whether the alleged obligor owes a duty of support and the extent thereof in conflict with any prior order of a court in the initiating state, its URESA order does not nullify the order of the initiating state fixing the support obligation of the obligor."  *Weidner v. Weidner,* 78 Md. App. 367, 372 (Md. Ct. Spec. App. 1989).  In *Weidner,* the Court of Special Appeals espoused the view, supported by "the great weight of authority in other jurisdictions . . . that the antisupersession provision of URESA means that the initiating state will not be bound by the terms of a support order of a responding state when the initiating state . . . calculates arrearages due under the original support order."  *Id*. at 373-74 (*citing* Md. Code Ann. art. 89C § 29.).[5]

Even after Maine and Maryland adopted UIFSA, the Maine Support Order remained and was unaffected by the Circuit Court's dismissal of the DHHS's UIFSA action in 2001.  Under the Full

---

[5] Moreover, as judgments entered by courts of different states under URESA statutes are "effective independently of each other," the issuance and enforcement of either state's support order does not violate the Full Faith and Credit Clause of Article IV.  *See id*. at 374 (initiating court's failure to give effect to responding court's reduction of support obligations did not violate Full Faith and Credit Clause).

10

Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B, a Responding State court cannot modify the support order of an Initiating State's court unless either the Initiating State's court no longer has continuing, exclusive jurisdiction, or each individual contestant consents to the Responding State court assuming exclusive jurisdiction.  28 U.S.C. § 1738B(e) (1997). In this case, Maine would still have continuing, exclusive jurisdiction over the Maine Support Order, as it is the residence of a "contestant"--the State.  *Id.* § 1738B(b), (d), (e).[6]

---

[6] 28 U.S.C. 1738B provides in relevant part:
   (b) *Definitions*.--In this section:
   . . .
   "contestant" means--
       . . .
       (B) a State or political subdivision of a State to which the right to obtain child support has been assigned.
. . .

(d) *Continuing jurisdiction*.--A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.

(e) *Authority to modify orders*.--A court of a State may modify a child support order issued by a court of another State if--
   (1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and
   (2)(A) the court of the other State *no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant;* or
   (B) each individual contestant has filed written consent with the State of continuing, exclusive

Second, the Defendants' right to enforce the Maine Support order is not precluded by the Circuit Court's 2001 dismissal of the UIFSA action. "Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel v. U.S.,* 369 F.3d 345, 354 (4th Cir. 2004) (*quoting Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

The DHHS's rights under the Maine Support order were litigated and *res judicata* in 1981, thus a final judgment on the merits of the subsequent UIFSA action in 2001 has no effect on the DHHS's right to enforce the Maine Support Order.  As the Defendants note, the doctrine of *res judicata* might only require that the Circuit Court's dismissal bars further UIFSA actions by the DHHS in Maryland.

III.  Conclusion

As the Maine Support Order remains in effect, the Defendants are entitled to every legal means available to enforce Roberts's obligations under it, including the collection efforts Roberts mischaracterizes as violations of his civil rights: filing a lien

---

jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.
28 U.S.C. § 1738B (1997) (emphasis added).

on his federal tax returns, reporting his arrearages to national credit bureaus, sending him collection notices, attempting to withhold his wages, and notifying him of possible criminal liability under the Child Support Recovery Act. Such alleged lawful collection measures on child support arrearages do not amount to constitutional violations. Accordingly, Roberts fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983, and the Complaint will be dismissed.


<u>January 26, 2007</u>                         <u>       /s/                </u>
Date                                     William D. Quarles, Jr.
                                         United States District Judge